**18**

## In re CENTRAL FORGING CO.
### No. 9822.

District Court, M. D. Pennsylvania.
April 15, 1941.

See, also, 31 F.Supp. 1020.

F. Brewster Wickersham, of Harrisburg, Pa., for Bondholders' Protective Committee.

Hervey B. Smith and E. Eugene Eves, both of Bloomsburg, Pa., for the Beckleys.

Walter H. Compton, Trustee, of Harrisburg, Pa., and Clair Groover, of Lewisburg, Pa., for the trustee.

Harry S. Knight, of Sunbury, Pa., for Owners of Maxi Mfg. Co.

JOHNSON, District Judge.

January 8, 1941, the trustee filed a plan of reorganization in the above proceedings, proposing the merger of the above debtor with the Maxi Manufacturing Company. Pursuant to order of court and notice duly given, hearings on the plan and objections were heard by the court on January 28, 1941, February 8, 1941, and February 24, 1941. Exceptions to the plan were filed by the Bondholders' Protective Committee, and by the Beckleys, unsecured creditors and bondholders. Now before the court is the question whether the trustee's plan of reorganization is fair and equitable, and feasible, and meets the requirements of section 216 of the Bankruptcy Act, 11 U.S.C.A. § 616.

At the arguments before the court, only the exceptions of the Bondholders Committee were argued, and they will be considered in the order made. Counsel for the Beckleys have stated that these exceptions include the substance of the exceptions filed by the Beckleys.

First, the bondholders object to paragraph 3 of the trustee's plan, which provides: "It is proposed that all accrued interest due to all creditors and bondholders be abated and therefore interest is not capitalized or calculated on any indebtedness."

Interest now due the bondholders amounts to almost $40,000. Interest items due others total about $12,000. The trustee explained that interest on all items was dropped in the plan in an effort to scale down the indebtedness of the company and its inflated values prior to these proceedings in the Federal courts, and that with that end in view it seemed a fair proposition. Notes of testimony, page 14. From all the facts that have come to the attention of the court it is essential that the obligations of the debtor be scaled down to a point where the total indebtedness of the company is fairly backed by the actual value of the company's assets. If all obligations now owed by this debtor were preserved on a 100% basis, then the debtor might as well be liquidated now, for it could have no hope of anything but inflation and insolvency. Even though the bondholders represent the class whose rights first must be protected, this does not mean that a plan of reorganization, to be

fair and equitable, and feasible, must preserve all those rights 100% or even preserve all proportionately. It means that their rights must be so preserved that, if the reorganized company succeeds and profits, the first fruits of that success or profit will go to the bondholders, or if the reorganized company fails to succeed, the bondholders' contribution will be protected first. In the determination of what is fair and equitable, and feasible, the facts of each case must be considered, and cases which bear a superficial similarity may not present the same problems at all.

Secondly, the bondholders object to paragraph 4 of the trustee's plan, which provides: " * * *  It is proposed to transfer all the assets of the Central Forging Company to the Maxi Manufacturing Company and change the name of Maxi Manufacturing Company to the Catawissa Valve and Fittings Company."

The bondholders claim that the debtor represents an asset worth $63,561.48, while the Maxi represents an asset of only $14,-734.35. Treating the first item as the contribution of the debtor's bondholders, the latter then insist they should have returns provided for them four times as great as those provided to the present owners of the Maxi Company. This does not follow. What each of these companies is contributing is not measured alone in dollars and cents. According to the bondholders the debtor is contributing an asset worth more than $60,000. As the trustee points out, this figure is high, because, for one thing, it does not take into consideration the reorganization expenses incurred by the trustee. Furthermore, the debtor is contributing an insolvent corporation, a corporation with no credit in the business world, with dilapidated buildings and equipment unable to pass inspection by the Federal government, a corporation which needs certain patents, the ownership of which is in dispute between Fred Long of the Maxi Company and the debtor, and for which royalties would have to be paid if the two companies operate separately. The Maxi Company is contributing to the new corporation a solvent company with good business credit and a working organization, now operating at a profit, a plant in position to pass government inspection and give necessary performance bonds, and now receiving government contracts. It is giving an inventor, who owns a controlling interest in the Maxi Company and who is entitled to the first profits of that company, but who

under this plan of reorganization postpones his opportunity for profits until the debtor's bondholders and common creditors are paid dividends. This inventor, who will have executive charge, agrees to put a limitation on his salary so that profits cannot be consumed by excessive salaries; and the other two members of his executive organization agree to do the same. The present owners of the Maxi agree to turn over the business to the bondholders and creditors of the debtor if the new corporation fails to pay dividends, and they relinquish their right to obtain anything for the $21,300 par value of the debtor's bonds now held by them. In view of these facts, the bondholders assume a tenuous position in insisting that a plan of reorganization to be fair and equitable, and feasible must give them four times as much interest and control in the new company as is given to the present owners of the Maxi Company. Attention is called to the testimony of the trustee on pages 77 and .78 and to the explanation of the patent situation on pages 83 to 88, indicating the uncertain future for the debtor if a merger is not effected with the Maxi Company.

Thirdly, the bondholders object to paragraph 14 of the trustee's plan, which provides: "After the payment of all installments on any mortgage indebtedness and the payment of all other expenses incident to the conduct of the said business and after all cumulative dividends on First Preferred and the current dividends on Second Preferred, and a current five per cent dividend on common shall have been paid, then any surplus earnings may at the discretion of the Board of Directors be used to retire, 1st, the First Preferred stock at par and accumulated dividends; next, the Second Preferred stock at par—in both instances the particular stock to be retired at any particular time, to be selected by lot."

Because the bondholders of the debtor will elect only 2 of the 7 directors of the new corporation, they object to the above provision because they may be paid off eventually. Also they object they are not getting enough stock for their investment in the debtor. Considering these objections together, this court has by prior opinions determined that the bondholders' investment in the debtor is now worth about thirty cents on each dollar invested. Under the stock and dividend provisions in the trustee's plan, if the merged company profits and the bondholders preferred stock is

called, they will have received forty cents on each dollar invested in the debtor plus dividends from January 1, 1943, until the time their stock is called. The bondholders are not contributing any new money to the merged corporation, nor have they made any proposal or suggestion where such money might be obtained, and yet it is obvious that there must be some new money. The persons who are contributing the Maxi Company have agreed to make arrangements for borrowing $35,000 of new money. Also, the bondholders submitted suggestions for a plan of reorganization, but they have not presented a plan complying with the requirements of section 216 of the Bankruptcy Act, without even considering whether, in addition, it is fair and equitable, and feasible. Under the circumstances it would be unfair and inequitable to require provisions in the plan giving the debtor's bondholders more stock for their present investment, all the first profits and all the control in the new company. Further, if any of the debtor's bondholders do not wish to invest in the new company, provision is made that they will receive at least the present net worth of their investment in the debtor.

Fourthly, the bondholders object to paragraph 12 of the trustee's plan, which provides for the retention of a second mortgage now existing against the Maxi Company, as a junior lien against the merged company. The objection appears to be based solely upon the fear that the persons in control of the merged corporation may manage it so as to cause an execution to be issued on this second mortgage and all the assets placed in the hands of the mortgagee. The ability and integrity of the men who will control the operations of the new company have been presented to this court, and the court will not indulge a presumption of misfeasance on their part in that management.

Fifthly, the bondholders object to the use of the word "Catawissa" in the proposed name of the merged company. The trustee has expressed his complete willingness to recommend any other name, and to that statement the bondholders have remained silent and made no suggestion whatever. This objection is without merit.

For the foregoing reasons, it is ordered that the objections and exceptions filed against the trustee's plan of reorganization of the debtor be, and they are hereby, overruled and dismissed, and

It is further ordered that the trustee's plan of reorganization be, and it is hereby approved as complying with the provisions of section 216 of the Bankruptcy Act, and as being fair and equitable, and feasible, and

It is further ordered that the creditors and stockholders affected by said plan shall have sixty (60) days from the date of this order within which to accept this plan, and

It is further ordered that the trustee shall, within thirty (30) days from the date of this order transmit, by mail or otherwise, to all creditors and stockholders affected by the plan

(1) The plan approved, together with a summary thereof approved by the Judge;

(2) A copy of this opinion and order; and

(3) A form on which the said creditors and stockholders shall indicate their acceptance or non-acceptance of the plan, which form shall set forth plainly the last date upon which said acceptance or non-acceptance must be filed, and further indicating that all such acceptances or non-acceptances shall be filed with the clerk of this court.